## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

ELIOT F. BLOOM, a/k/a ELIOT BLOOM,    )
ELIZABETH BLOOM,    )
    )
       Plaintiff (s),    )      **Case No. Case No. 2:20-cv-5750**
    )
   v.    )
    )
FREEDOM MORTGAGE    )
CORPORATION,    )      **Trial by Jury Demanded**
    )
   Defendant (s).    )
    )
    )

## COMPLAINT

Plaintiffs, Eliot Bloom and Elizabeth Bloom, by and through Charles Wallshein Esq. as counsel, for their Complaint against Defendant, Freedom Mortgage Corporation, (hereinafter "Freedom") states as follows:

### INTRODUCTION

1.    In January 2013, the Consumer Financial Protection Bureau ("CFPB") issued several final rules concerning mortgage markets in the United States, pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), Public Law No. 111-203, 124 Stat. 1376 (2010).

2.    Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z) Mortgage Servicing Final Rules, 78 FR 10901 (Regulation Z) (February 14, 2013) and 78 FR 10695 (Regulation X)(February 14, 2013).  These Regulations became effective on January 10, 2014.

3.    The residential mortgage loan in this case is a "federally related mortgage loan" as that term is defined by Regulation 12 C.F.R. §1024.2 (b) of the said Regulations.

4.      The Defendants in this case are subject to Reg X and Reg Z and RESPA and TILA generally.

5.      Plaintiffs' claims are based upon the Defendants' unlawful conduct during the loan modification process both prior to and during the state court foreclosure action.

6.      There is a foreclosure action pending against Eliot Bloom and Elizabeth Bloom in the Supreme Court of the State of New York, Suffolk County, Index Number 605563/2015, wherein Defendant-Freedom Mortgage seeks to foreclose their home located at 22 Clearwater Lane, West Islip, New York. The foreclosure action was commenced on May 28, 2015.

7.      At all times during the foreclosure action, Freedom Mortgage has acted as the holder of the note and or as the authorized loan servicing agent for the holder of the note.

8.      Upon information and belief at some point during the life of Plaintiffs' loan Loancare Inc. acted as the servicing agent or in a capacity as agent for the master servicer for Plaintiff's loan.

9.      At the time of origination of the loan in August 29, 2008 the loan was sold into the secondary mortgage market pursuant to Federal Housing Administration ("FHA") guidelines with a guarantee by the Department of Housing and Urban Development ("HUD").

10.      Plaintiffs claim that Defendant committed civil fraud against Plaintiffs including violations of 12 U.S.C. 2605(f), 12 C.F.R. §1024.35, 12 C.F.R. §1024.41, 15 U.S.C. §1692(a)(5). Plaintiff seeks monetary damages as relief pursuant to RESPA and pursuant to New York General Business Law §349 and for civil fraud under New York common law.

## PARTIES, JURISDICTION, AND VENUE

11.      Plaintiffs ("the Blooms" or "Plaintiffs") are the owners of the real property located at 22 Clearwater Lane, West Islip, New York (the "Home").

12.      At all times relevant, the Blooms are seized of a fee simple interest in the property and has maintained and currently maintain the Home as their primary, principal residence. Plaintiffs are residents of the State of New York, County of Suffolk.

13. Defendant Freedom Mortgage is the servicer of a note executed by Plaintiff (the "Note") and a mortgage on the Home executed by Plaintiff that purportedly secures the Note (the "Mortgage") (collectively referred to hereinafter as the "Loan").

14. Defendant Freedom Mortgage Corporation has its principal place of business in the State of New Jersey.

15. At all times hereinafter mentioned, pursuant to 12 C.F.R. §1024.31, loss mitigation option means an alternative to foreclosure offered by the owner or assignee of a mortgage loan that is made available through the servicer to the borrower.

16. At all times hereinafter mentioned, pursuant to 12 C.F.R. §1024.31, *Loss Mitigation Application* means an oral or written request for a loss mitigation option that is accompanied by any information required by a servicer for evaluation for a loss mitigation option.

17. At all times hereinafter mentioned, pursuant to 12 C.F.R. §1024.31, *Loss Mitigation Option* means an alternative to foreclosure offered by the owner or assignee of a mortgage loan that is made available through the servicer to the borrower.

18. At all times hereinafter mentioned, pursuant to 3 NYCRR 419.1(c), *Loan Modification* means waiver, modification or variation of any material term of the mortgage loan, irrespective of whether the duration is short-term, long-term or life-of-loan, that changes the interest rate, forbears or forgives the payment of principal or interest or extends the final maturity date of the loan.

19. The issues presented in this litigation concern Plaintiffs' claims against Freedom Mortgage for mortgage loan servicing misconduct concerning violations of New York State and federal law.

20. The issues presented in this litigation concern Plaintiffs' claims against Defendants pursuant to federal question.

21. State law also provides additional remedies to Plaintiffs not available pursuant to federal law.

22. All claims herein pursuant to federal and state law arise under a common nexus of facts.

23.     Plaintiffs' supplemental claims pursuant to New York law may be heard in this Court pursuant to 28 U.S.C. §1367.

24.     Plaintiffs are each a "consumer" as defined by 15 U.S.C. §1692(a)(3) because they are natural persons allegedly obligated to pay the Loan on the Home.

25.     The Loan is a "debt" within the meaning of 15 U.S.C. §1692(a)(5) because it arose from a transaction in which the money was used for personal, family, or household purposes. Plaintiffs incurred the Loan to purchase the Home.

26.     At all times relevant, Freedom communicated with Plaintiffs in attempting to collect the Loan as the authorized servicer of the loan.

27.     At no time has Freedom or its purported predecessor loan servicing agent Loancare Inc., provided lawful notice of the change in loan servicing pursuant to New York State and or federal laws and regulations.

28.     Freedom regularly uses the mail and other instrumentalities of interstate commerce to collect or attempt to collect debts owed or due or asserted to be owed or due another.

29.     Freedom regularly and often represents the owners of FHA/HUD mortgage notes and regularly engages in collection through foreclosure of debts owed by consumers or communicates with mortgagors with respect to the servicing of residential mortgage loans.

30.     Freedom is a "debt collector" as defined by 15 U.S.C. §1692(a)(6).

31.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under federal law, to wit; RESPA and the FDCPA.

32.     The case in controversy exceeds the threshold dollar amount for jurisdiction to maintain this action and is between citizens of different states.

33.      This Court has jurisdiction to hear this action pursuant to 28 U.S.C. 1332(a)(1).

34.      The Court has jurisdiction to hear supplemental state law claims pursuant to 28 U.S.C.  §1367.

35.     At all times hereinafter mentioned, pursuant to 3 NYCRR §419.7 the loan servicer has a duty of fair dealing when engaging in loan servicing activities with consumers.

36.     At all times hereinafter mentioned, pursuant to 3 NYCRR §419.7 Freedom had and has a continuing duty to make borrowers in default aware of loss mitigation options and services offered by the servicer.

37.     At all times hereinafter mentioned, pursuant to 3 NYCRR §419.10 Freedom had and has a continuing duty to comply with all applicable federal and New York State laws and regulations relating to mortgage loan servicing, including but not limited to RESPA, the Truth-in-Lending Act, 15 U.S.C. section 1600 *et seq.* and regulation Z adopted thereunder, 12 C.F.R. section 226 *et seq.*, section 6-k of the Banking Law and article 9, title 3-A, of the Real Property Tax Law.

38.     At all times hereinafter mentioned, pursuant to 3 NYCRR §419.6 Freedom had and has a continuing duty to respond to consumer complaints.

39.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Plaintiff maintains the Home as their primary residence within this District.

## THE UNMODIFIED MORTGAGE & NOTE

40.     On November 23, 2005 Plaintiffs borrowed the sum of $739,935 from Freedom Mortgage Corporation. Please See **Exhibit "A" [Complaint Attachment "1-1"]**, Note, And **Exhibit "B"**, **[Complaint Attachment "1-2"]** Mortgage.

41.     Upon information and belief, the Mortgage has not been assigned. The note is subject to a collateral assignment and guarantee pursuant to the pooling agreement between FHA and Freedom Mortgage.

42.     Plaintiffs maintain that at all times relevant Freedom was bound by law and by its own internal guidelines and contractual relationships with HUD, FHA, GNMA and the Department of the Treasury to review the Plaintiffs and all borrowers similarly situated for mortgage assistance under FHA guidelines. Freedom Mortgage made intentional misrepresentations of fact to Plaintiffs regarding their ability to modify the mortgage loan. The misrepresentations made by Freedom include the false pretextual excuse proffered that the investor does not modify mortgages.

43.     Plaintiffs also maintain that the deceptive practices engaged in by Freedom against the Plaintiffs are also deceptive practices aimed at the general public. The uniformity of the FHA mortgage and note and the uniformity of the guidelines make the misinformation and misrepresentations by Freedom affect all persons with FHA loans serviced by Freedom. It was Freedom's intent to keep its loan servicing guidelines a secret by purposefully mischaracterizing its position concerning the availability loan modifications to distressed borrowers as members of the general public and as a class of persons who were denied loan modifications by Freedom.

## BASIS FOR CLAIMS FOR RELIEF

44.     The Plaintiffs are asserting a claim for relief against the Defendants for breach of the specific Rules under Regulation X as set forth below.  The Plaintiffs have a private right of action under the Real Estate Settlement Procedures Act, 12 U.S.C. §2605(f) for these breaches and such an action includes actual damages, costs, statutory damages and attorney's fees. The Plaintiff also make claims under state law for violations of GBL §349 for unfair and deceptive trade practices and the Plaintiffs claim actual damages and punitive damages.

45.     Plaintiffs' claims arise pursuant to a set of events involving the foreclosure of their home located in Suffolk County, State of New York.

46.     In 2015 Freedom Mortgage Corporation, commenced its second action in New York State Supreme Court for the County of Suffolk under Index Number: 605563/2015 to foreclose Plaintiff's home.

47.     Plaintiffs raised refusal of tender as an affirmative defense to the foreclosure in their answer and in subsequent motions for summary judgment in the foreclosure.

48.     The Blooms allege that they had tendered payment to the Defendant's former loan servicer, Loancare Inc., in 2012. If true, then the 2015 foreclosure complaint should be dismissed. After 12 C.F.R. §1024 was enacted in January 2014 the Blooms elected to avail themselves of these new regulations that have been enacted specifically to address loan servicing errors. An error concerning the loan servicer's failure to credit payments to their account is one of the types of

information that may be requested by a complainant pursuant to 12 C.F.R. §1024.36 as a "request for Information".

49.     Upon receipt of a notice of error, the loan servicer has a prescribed period in which to either correct the alleged errors or, after performing a reasonable investigation, notifying the borrower that no such error occurred pursuant to 12. C.F.R.§1024.35.

50.     The statutory scheme is in place specifically to prevent the outcome that result that Plaintiffs experience here. Plaintiffs seek to apply the statutory scheme to recover damages from Defendants for violations of 12 C.F.R. §1024.35, 12 C.F.R. §1024.36, 12 C.F.R. §1024.38, 12 C.F.R. §1024.39.  In this case,. Plaintiffs seek damages from Defendants for its failure adequately respond to Plaintiffs' requests for information to correct errors of which Defendant was given lawful notice pursuant to 12 C.F.R. §1024.35. Plaintiffs also seek this relief so that they may adequately defend the foreclosure action brought against them by obtaining the loan servicing records in the possession of the loan servicing agent for their loan, Freedom Mortgage Corporation.

51.     Plaintiffs believe that the statutory regime is designed to make the servicing of their mortgage loan transparent. The statutory regime is designed to ensure that borrowers have a statutory right to determine and review all documents that concern the servicing of their mortgage loan.  This includes the valuation of their homes, the instruments upon which the payment is based and calculated. It further includes the right to see a complete accounting for all monthly principal, interest, taxes and insurance paid on behalf of the borrowers.

52.     Where borrowers seek mortgage assistance and permanent mortgage modification, the statutory scheme ensures that the applicants for permanent mortgage modification are made aware of all loss mitigation options available to them. If certain options are not available, the servicer, here Freedom Mortgage Corporation, must provide a reasonable explanation as to why the options are not available to the borrowers pursuant to 12 C.F.R. §1024.41(c).

53.     The borrowers have the right to seek specific information concerning the mortgage servicing of their loan pursuant to 12 C.F.R. §1024.36.

54.     Plaintiffs served Freedom Mortgage with requests for information pursuant to 12 C.F.R. 1023.36.

55.     Plaintiffs served Freedom Mortgage with notices of error pursuant to 12 C.F.R. §1024.35.

56.     Freedom Mortgage has failed to timely provide information pursuant to 12 C.F.R. §1024.36.

57.     Freedom Mortgage has failed to correct its errors or otherwise perform a reasonable investigation into its alleged errors pursuant to 12 C.F.R. §1024.35.

58.     Freedom Mortgage's conduct violates its legal obligations under RESPA.

59.     Freedom Mortgage's conduct is deceptive and unfair by establishing policies and procedures that are in derogation of its legal obligations under State and Federal law with respect to the processing of requests for mortgage assistance or loss mitigation.

60.     Freedom Mortgage's conduct, policies and procedures result in Freedom steering consumers away from affordable permanent mortgage modifications and ultimately cause needless harm to consumers rather than help consumers. The harm caused results in the loss of consumers' homes to foreclosure where a home retention option is otherwise available.

61.     Freedom's conduct here is a matter of standard policy in that Freedom has a legal obligation to review all delinquent borrowers that apply for loan modifications under procedural and substantive rules and laws established by New York State, federal law pursuant to RESPA and pursuant to rules established by the Department of the Treasury.

62.     Plaintiff is a consumer and Freedom Mortgage Corporation's acts are directed against Plaintiff as a consumer.

63.     Freedom Mortgage Corporation's conduct is unfair and deceptive and violates the obligations of good faith imposed under New York State Law and its obligations under RESPA and other federal laws.

64.     Freedom Mortgage Corporation's conduct specifically injured the Plaintiffs in this action and said conduct is the direct proximate cause of the harm and injuries to the Blooms and mortgagors as consumers that CPLR §3408, 3 NYCRR §419, and RESPA are meant to prevent. By engaging in this unlawful conduct Freedom Mortgage Corporation has caused Plaintiffs to suffer statutory, economic and non-economic damages.

65.     Freedom Mortgage Corporation's conduct and omissions concerning its incomplete responses to Plaintiffs' Requests for Information, discovery demands, incorrect and responses to demands and to foreclosure modification options, and its failure to correct errors have prevented the Blooms from modifying the mortgage on their home. Freedom Mortgage Corporation's conduct denied the Plaintiffs' their rights under New York State and federal law to review Freedom's loan servicing file that is created and maintained by Freedom Mortgage and its predecessor loan servicing agent(s).

66.     Defendant's omissions are directly related to the inability of Plaintiffs to successfully apply for a loan modification, because the lack of accuracy and truthfulness on the part of Freedom Mortgage acts as an unlawful deterrent to the Blooms specifically, and to all consumers whose loans are serviced by Freedom, and to the general public as a class of Plaintiffs who lose equity in their homes and are ultimately deprived of possession of their homes due to foreclosure where a viable home retention option is available.

67.     Plaintiffs have been damaged by Defendant's conduct and seek actual damages, statutory damages and punitive damages as allowed under the law, as a jury deems proper and may award.

## PLAINTIFF'S FIRST REQUEST FOR INFORMATION AND NOTICE OF ERROR

68.     Defendant made written inquiries with Freedom Mortgage Corporation, concerning the modification programs for which they could apply in 2015. Defendant mailed to Freedom Request for Information dated December 14, 2018, See **Exhibit "C" [Complaint Attachment "1-3"].**

69.     Freedom's response in its March 12, 2019 letter stated that there are no home retention options of the loan as per the investor of the loan. See **Exhibit "D" [Complaint Attachment "1-4"].**  Freedom transmitted another response that appears to be to the same request by Plaintiff. The letter from Freedom is dated April 16, 2019 and is annexed hereto as part of Exhibit "D".

70.     Plaintiff's mortgage is an FHA loan. FHA loans are federally insured. HUD and the U.S. Treasury have established guidelines for delinquent borrowers who seek to modify their loans. The "investor guidelines" for Plaintiffs' loan do not prohibit loan modification.

71.     Defendant's statement in its March 12, 2019 letter concerning investor restrictions against modification is a material misrepresentation of fact that was meant to deceive the Plaintiffs.

72.     The material misrepresentation made by Freedom Mortgage to the Plaintiffs falls within the type of deceptive act contemplated by General Business Law §349. The borrower-Plaintiffs are members of the public at large.

73.     Freedom Mortgage Corporation services loans that are taken by the general public.

74.     Freedom Mortgage Corporation services numerous loans FHA mortgages that are taken by the general public.

75.     The particular type of loan in question, a FHA loan, is routinely modified pursuant to FHA/HUD and US Treasury guidelines.

76.     Freedom Mortgage Corporation services numerous loans FHA mortgages that are taken by the general public.

77.     The misrepresentation made to the Plaintiffs by Freedom Mortgage Corporation were made as a blanket denial common to other mortgagors whose loans are insured by FHA and HUD.

78.     Freedom Mortgage earns a higher profit from keeping loans in default as part of a scheme and pattern and practice of deceptive acts meant to create a loan servicing profit center for collecting higher fees for servicing defaulted loans pursuant to the terms of the servicing agreement(s) between it (Freedom), and FHA and HUD.

79.     The unlawful and deceptive conduct by Freedom Mortgage is directed against delinquent borrowers and other borrowers in foreclosure and is manifested by and through Freedom mailing of a form letter to its borrowers who are members of the subset of the general public as a response to borrower's Requests for Information and as responses to borrower's Notices of Error.

80.      Freedom's unlawful and deceptive conduct is also directed against members of the general public who have applied for modifications of their mortgages and were denied by Freedom under the false pretense as being prohibited by an investor restriction.

81.      On June 27, 2019 Plaintiffs, by and through counsel, transmitted a Notice of Error to Freedom. The Notice of Error specifically details the errors and omissions committed by Freedom in its response to Plaintiff's Request for Information.  See Notice of Error from Plaintiff to Freedom Mortgage dated June 27, 2019. See **Exhibit "E" [Complaint Attachment "1-5"].**

82.       On or about August 8, 2019 Freedom Mortgage responded to Plaintiffs' Notice of Error. See response from Freedom Mortgage dated August 8, 2019, annexed hereto as **Exhibit "F" [Complaint Attachment "1-6"]**. Defendant's response to Plaintiffs was essentially that the Plaintiffs' Request for Information was overbroad and that the omissions identified in the Notice of Error would not be corrected.

## <u>FREEDOM MORTGAGE HAS ENGAGED IN A PATTERN</u><br><u>AND PRACTICE OF NONCOMPLIANCE</u>

83.      Plaintiffs claim that Freedom has engaged in a pattern and practice of making false statements to borrowers concerning material misrepresentations of fact with regard to the loan modification options open and available to avoid foreclosure and to avoid the loss of their home while in foreclosure.

84.      In this instance the pattern or practice is established by Defendants' allegations in a lawsuit where it is the Plaintiff against one of its prior loan servicing agents Loancare LLC. The docket number in that matter is United States District Court for the District of New Jersey, Camden Vicinage, 1:16 cv- 02569 (RMB, KMW). The Court has denied the parties' respective motions for summary judgment as of July 23, 2020. Loancare LLC is the prior loan servicer for Freedom Mortgage on the Blooms' mortgage loan.

85.      The Complaint alleges that Loancare committed a number of loan servicing errors and failed to correct the errors when brought to Loancare's attention by Freedom Mortgage. The Complaint further alleges that Freedom Mortgage's ability to service loans properly was hampered

by Loancare's refusal to release the files to Freedom Mortgage. See Freedom Mortgage Complaint. **Exhibit "G" [Complaint Attachment "1-8"]**.

86.     Freedom's Complaint further alleges that Loancare lost mortgage servicing files.

87.     Freedom's Complaint further alleges that Loancare mishandled or had not performed any loan servicing functions on 866 loans listed on Loancare's list of loans serviced for Freedom Mortgage. Plaintiffs also submitted fully answered and addressed loan modification documents to Freedom, on their accord and by their former attorney, and all of those modification applications were either wrongfully rejected by Freedom, or not responded to by Counsel for Freedom.

88.     The Consumer Financial Protection Bureau maintains a database of all complaints made by consumers against loan servicers. Attached hereto is a list of 37 complaints filed against Freedom Mortgage in New York since 2016 concerning loan servicing limited to loan modifications.

89.     The balance of the documents filed in the lawsuit that contain discovery materials and affidavit testimony are unavailable to the general public through the PACER system because the record has been partially sealed by the Court in that action.

90.     An inference may be drawn from the complaint as an admission against interest that Plaintiffs have established a factual basis for the allegations of pattern and practice of loan servicing errors in loans serviced by Loancare and Freedom Mortgage. The Complaint filed by Freedom Mortgage establishes a factual basis to support Plaintiffs' allegations that here, Freedom Mortgage as the Defendant, had a "standard or routine way of operating" that included a disregard for adequately responding to consumer requests for information and an inability to correct errors because Freedom's loan servicing records were either lost or were being held hostage by a disgruntled vendor-sub-servicer, Loancare LLC.  The responses made by Freedom to demands for discovery or the production of files were false and misleading in that those responses failed to inform the party making the demand that the files were lost, or unavailable, rather than falsely claim that the demand was overbroad, or by not responding at all.

91.     An inference may be drawn from the sworn complaint as an admission against interest that Plaintiffs have established a factual basis for the allegations of pattern and practice of loan servicing errors specifically concerning the unavailability of loan servicing records subject to production pursuant to requests made by the Plaintiffs herein 12 C.F.R. §1024.36 and 12 C.F.R. §1024.35 in loans serviced by Loancare and Freedom Mortgage.

92.     At the time of the filing of this Complaint, consumers nationwide have lodged One Hundred Ninety-Five (195) consumer complaints against Freedom, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (http://www.consumerfinance.gov/complaint database/).

## FIRST CAUSE OF ACTION; INADEQUATE RESPONSE
## VIOLATION OF 12 C.F.R. §1024.36 and 12 U.S.C. § 2605(k)(1)(E)

93.     Plaintiffs reallege all facts contained in prior paragraphs as if fully rewritten herein.

94.     Freedom Mortgage is in violation of 12 C.F.R. §1024.36, to wit, its failure to properly respond to Plaintiffs' Requests for Information.  The misconduct alleged here is for untimely and inadequate responses to Plaintiffs Requests for Information.

95.     The information requested is within the scope of information that must be disclosed pursuant to a request made pursuant to 12 C.F.R. §1024.36.

96.     Plaintiffs could not adequately take advantage of any of the loss mitigation options that may have been available to them during the foreclosure process to avoid the loss of their home.

97.     As a direct result of Defendant's refusal to comply with the provisions of 12 C.F.R. §1024.35 and to adequately respond to the notice of error in a timely manner as prescribed by the Rule, the Plaintiffs have been denied an opportunity to seek an affordable loss mitigation option and consider other possible options to resolve his default.

98.     Plaintiffs had to engage counsel to enforce their rights under RESPA and have paid attorney's fees to their counsel solely for the purpose of sending requests for information and

notices of error and communicating with Freedom Mortgage in an attempt to avoid litigation and obtain an affordable loan modification.

99.     Freedom Mortgage has obfuscated the process and made the loss mitigation process opaque so that Plaintiffs and consumers such as the Plaintiffs cannot review the information used by Freedom to service their loan so that they may formulate a defense to the foreclosure action or to otherwise pursue remedies for sanctions in state court concerning violations of the bad faith statutes available to all foreclosure defendants under  CPLR §3408.

100.    The Blooms have suffered both statutory and actual damages in the form of economic damages resulting from Freedom Mortgage's violation of RESPA and for other misconduct in the form of attorney's fees, accrued mortgage interest, costs, time spent attempting to obtain mortgage assistance including both personal and work time.

101.    Plaintiffs have suffered actual damages in the form of economic damage for incurring attorneys' fees and expenses in preparing and sending the Notice of Error which would not have been necessary but for Freedom Mortgage's failure to properly respond to Plaintiffs' Request for Information as well as noneconomic damages resulting from Freedom Mortgage's misconduct in the form of mental anguish, a category of damages within which include stress, distress, worry, loss of sleep, anxiety, nausea, fear, pain and suffering, and temporary loss of a normal life resulting from the impact of Freedom Mortgage's misconduct on the Bloom's normal life.

102.    WHEREFORE, premises considered, Plaintiffs demand judgment against Freedom Mortgage for all lawful damages in an amount the jury deems reasonable and may award.

**<ins>SECOND CAUSE OF ACTION; FAILURE TO CORRECT ERRORS</ins>**
**<ins>VIOLATION OF 12 C.F.R. §1024.35(e) and 12 U.S.C. §§ 2605(k)(1)(C) and (E)</ins>**

103.    Plaintiffs reallege all facts contained in prior paragraphs as if fully rewritten herein.

104.    As per the Notice of Error delivered to Defendant Freedom Mortgage, dated June 27, 2019, Defendant failed to correct its failure to address the requests for information items contained in the Request for Information dated December 18, 2018 and failed to correct the

14

Bloom Complaint

following errors identified in the Notice of Error concerning Freedom's March 12, 2019 response to Plaintiffs' Request for Information. Defendant failed to address any of the requests in the RFI listed below.

1.  A list of home retention programs that are available per the investor if this Mortgage Loan.
2.  Please provide the details for eligibility and qualification of all home retention programs per the investor of this loan.
3.  Please provide a copy of all prior mortgage modification applications reviewed by you and if there was a determination that the borrower was ineligible, the letter stating the reason for the denial.
4.  Are you acting as a sub servicer, servicer and or default servicer, please explain your specific role?
5.  Was investor participating in HAMP Programs, Tier I and Tier II prior to January 1, 2017?
6.  The identity of and address for the current owner of the mortgage loan identified herein.
7.  The identity of and address for the master servicer of the mortgage loan identified herein.
8.  The identity of and address for the current servicer of the mortgage loan identified herein.
9.  Copies of all lost mitigation rules, polices or procedures that are applicable to the mortgage loan identified herein.

105.    The information requested is within the scope of information that must be disclosed pursuant to a request made pursuant to 12 C.F.R. §1024.36.

106.    Defendant Freedom Mortgage has failed to timely address notices of error for failing to adequately provide responses to Plaintiffs' Requests for Information within ten (10) days as prescribed by 12 C.F.R. §1024.36(d)(2)(i)(A).

107.    The misconduct alleged here against Freedom is for Freedom's failure to correct errors identified by Plaintiffs in the Notice of Error untimely and inadequate responses to Plaintiffs Requests for Information. Defendant has failed to timely address Plaintiff's Requests for Information within thirty (30) days as prescribed by 12 C.F.R. §1024.35(1)(i)(B) and 12 C.F.R. §1024.35(3)(i)(A).

108.    As a direct result of said failure to adequately respond to the notice of error in a timely manner as prescribed by the Rule, Plaintiffs could not adequately move forward with a loss mitigation application with Freedom Mortgage or to pursue loss mitigation in the State Court foreclosure action.

109.    As a direct result of said failure to adequately respond to the notice of error in a timely manner as prescribed by the Rule, Plaintiffs could not adequately take advantage of any of the loss mitigation options that should have been available to them during the foreclosure process to avoid the loss of their home.

110.    As a direct result of said failure to adequately respond to the notice of error in a timely manner as prescribed by the Rule, the Plaintiffs were denied an opportunity to seek an affordable loss mitigation option and consider other possible options to resolve their default.

111.    Plaintiffs have had to engage counsel to enforce their rights under RESPA and have paid attorney's fees to their counsel solely for the purpose of sending requests for information and notices of error and communicating with the Servicer in an attempt to avoid litigation and obtain an affordable loan modification.

112.    Freedom Mortgage has obfuscated the process and made the loss mitigation process opaque so that Plaintiffs and consumers such as the Plaintiffs cannot review the information used by Freedom to service their loan so that they may formulate a defense to the foreclosure action or to otherwise pursue remedies for sanctions in state court concerning violations of the bad faith statutes available to all foreclosure defendants under  CPLR §3408.

113.    The Blooms have suffered both statutory and actual damages in the form of economic damages resulting from Freedom Mortgage's violation of RESPA and for other misconduct in the form of attorney's fees, accrued mortgage interest, costs, time spent attempting to obtain mortgage assistance including both personal and work time.

114.    Plaintiffs have suffered actual damages in the form of noneconomic damages resulting from Freedom Mortgage's misconduct in the form of mental anguish, a category of damages within which include stress, distress, worry, loss of sleep, anxiety, nausea, fear, pain and

suffering, and temporary loss of a normal life resulting from the impact of Freedom Mortgage's misconduct on the Bloom's normal life.

115.    WHEREFORE, premises considered, Plaintiffs demand judgment against Freedom Mortgage for all lawful damages in an amount the jury deems reasonable and may award.

## THIRD CAUSE OF ACTION; CIVIL FRAUD AND DECEPTIVE PRACTICES; VIOLATION OF NY GERNERAL BUSINESS LAW 349(a) and (h)

116.    Plaintiffs reallege all facts contained in prior paragraphs as if fully set forth herein.

117.    At all times material to this case the Defendant Freedom Mortgage has acted in a manner intended to defraud and mislead Plaintiffs. Plaintiffs have alleged throughout the Complaint that Freedom made material misrepresentations of fact that it knew at the time made were untrue. Freedom's intent was to induce the Plaintiffs' reliance upon the false statements. The Plaintiffs allege that they did in fact rely upon Freedom's knowingly false statements and that their reliance was justified. Last, Plaintiffs allege that they have been damaged as a result of Defendant's false representations.

118.    The Defendant engaged in a pattern and practice of concealing the guidelines and loss mitigation procedures to maintain informational advantages over the consumers that sought mortgage assistance. Defendant's ultimate goal was to foreclose on the Plaintiffs' home by convincing the Plaintiffs that no loss mitigation alternatives were available that included home retention. When Plaintiffs discovered that Freedom's statements were false, they immediately hired counsel to remedy the fraud by appearing in the state court and by bringing the instant action.

119.    The Defendant's conduct violates and subverts the protections provided to consumers by CPLR §3408(f)(2) and 3 NYCRR 419.7, 3 NYCRR 419.10. CPLR §3408(i) and (j) is a consumer protection statute that operates within the context of a foreclosure action only.

120.    CPLR §3408(f) specifically incorporates into foreclosure actions those state laws and rules that creates a private right of action against Plaintiffs and its respective representative(s) pursuant to General Business Law §349.

121.     GBL §349(g) identifies the Defendants' conduct here as per se deceptive and unfair as the conduct described violates CPLR §3408(f)(2) and 3 NYCRR 419.7, 3 NYCRR 419.10, and is subject to redress and remedy pursuant to CPLR §3408(i) and (j) and 12 U.S.C. §2605(f). These laws specifically address consumer protections that must be afforded to all mortgagors that seeks mortgage assistance through RESPA and New York State loan servicing rules and laws.

122.     The Defendant's conduct violates and subverts the protections provided to consumers generally and to Eliot and Elizabeth Bloom, individually, specifically by subverting, avoiding and denying the rights and protections set out in the applicable sections of RESPA by failing to respond to their requests for information, to correct errors when given specific notice thereof with respect to their mortgage loan account and the application process and options for loss mitigation assistance.

123.     The Defendant's conduct violates and subverts the protections provided to consumers generally and to the Plaintiffs specifically by engaging in active deception and fraud as defined by state law with respect to the availability of mortgage modification relief. Defendant has engaged in deception that is specifically designed to make consumers believe that the act of making application for a loan modification is and would be futile and fruitless.

124.     Freedom Mortgage made intentional misrepresentations of fact Plaintiffs regarding their ability to modify the mortgage loan. The misrepresentations made by Freedom include the false pretextual excuse proffered that the investor does not modify mortgages. Plaintiffs maintain that at all times relevant Freedom was bound by law and by its own internal guidelines and contractual relationships with HUD, FHA, GNMA and the Department of the Treasury to review the Plaintiffs and all borrowers similarly situated for mortgage assistance under FHA guidelines.

125.     The Defendant failed to provide requested information to the Plaintiffs in a scheme to prevent the Plaintiffs and consumers in general from understanding all of their loss mitigation options and from having the relevant information regarding loss mitigation options for loans serviced by Freedom Mortgage to assist the Plaintiffs herein and the public at large at obtaining modification of their mortgage loans.

126.     The Defendant engaged in a pattern and practice of concealing the guidelines and loss mitigation procedures to maintain informational advantages over the consumers that sought mortgage assistance.

127.     Plaintiffs' ceased making attempts to modify their loan because of Defendant's misstatements. This caused the foreclosure to proceed unabated by loss mitigation options that were intentionally concealed from Plaintiffs.

128.     At all times relevant Freedom Mortgage was aware that the information it withheld pertained to a class of loans that are serviced by Freedom Mortgage. The class of loans in question are FHA loans guaranteed by the Government National Mortgage Association.

129.     The class of loans in question are uniform in terms of contractual covenants and obligations associated with the mortgagor and mortgagee.

130.     FHA, HUD and the Department of the Treasury have enacted uniform guidelines and rules concerning the class of loans in which Plaintiffs' loan situate. The class of loans in question are uniform in terms of contractual covenants and obligations associated with the loan servicer's obligations by which loan modification applications from borrowers are evaluated.

131.     The Defendant engaged in deceptive practices to avoid disclosure of applicable loss mitigation policies and procedures to applicants seeking mortgage assistance for the purpose of thwarting consumers' rights to access this information and to make informed decisions about offers of and the availability of mortgage assistance.

132.     The Defendant engaged in a pattern and practice of conduct that is in derogation of federal and state law that require transparency in the mortgage loan servicing and mortgage modification application process.

133.     The Defendant engaged in a pattern and practice of failing to consider all mortgage assistance programs by steering consumers to programs of the Defendant's choosing that are financially advantageous to the Defendants.

134.     The Defendant is engaged in a pattern and practice of deception and misrepresentations that are hostile to Plaintiffs' rights to a good faith, lawful, and compliant review of requests for mortgage assistance in violation of law.

135.     The Defendant engaged in a pattern and practice of omitting and suppressing the true facts regarding the Defendant's review of requests for mortgage assistance including their efforts to steer consumers to financially disadvantageous mortgage modifications.

136.     The effect of these misrepresentations and the suppression and omission of the true facts are to deny Plaintiffs and other consumers so situated the protections afforded under New York and Federal Law for the collective benefit of the Defendant.

137.     This conduct is not limited to Plaintiffs but was and is directed at consumers generally by the Defendant. Freedom's conduct, policies and procedures result in Freedom steering consumers away from affordable permanent mortgage modifications and ultimately cause needless harm to consumers rather than help consumers. The harm caused results in the loss of consumers' homes to foreclosure where a home retention option is otherwise available.

138.     Freedom's conduct here against these particular Plaintiffs is a matter of Freedom's standard policy in that Freedom has a legal obligation to review all delinquent borrowers that apply for loan modifications under procedural and substantive rules and laws established by New York State, federal law pursuant to RESPA and pursuant to rules established by the Department of the Treasury.

139.     Freedom Mortgage has obfuscated the process and made the loss mitigation process opaque so that Plaintiffs and consumers such as the Plaintiffs cannot review the information used by Freedom to service their loan so that they may formulate a defense to the foreclosure action or to otherwise pursue remedies for sanctions in state court concerning violations of the bad faith statutes available to all foreclosure defendants under  CPLR §3408.

140.     The Blooms have suffered actual damages in the form of economic damages resulting from Freedom Mortgage's misconduct in the form of attorney's fees, accrued mortgage interest, costs, time spent attempting to obtain mortgage assistance including both personal and work time. Pursuant to GBL §349 Plaintiffs seek punitive damages as permitted by the statute.

141.     Plaintiffs have suffered actual damages in the form of noneconomic damages resulting from Freedom Mortgage's misconduct in the form of mental anguish, a category of damages within which include stress, distress, worry, loss of sleep, anxiety, nausea, fear, pain and

suffering, and temporary loss of a normal life resulting from the impact of Freedom Mortgage's misconduct on the Bloom's normal life.

142.    WHEREFORE, premises considered, Plaintiffs demand judgment against Freedom Mortgage for all lawful damages in an amount the jury deems reasonable and may award.

## **<u>JURY DEMAND</u>**

Plaintiffs hereby request a trial by jury on all issues, with the maximum number of jurors permitted by law.

Respectfully submitted,

_____/S/_____

Charles Wallshein Esq.
Attorney for Plaintiffs
35 Pinelawn Road
Suite 106E
Melville, NY 11747
631 824-6555
cwallshein@wallsheinlegal.com

21
Bloom Complaint